UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  09/23/24
```

```
ELAAD ELIAHU,

                    Plaintiff,

    - against -

MEDIAITE, LLC,

                    Defendant.
```

23 Civ. 11015 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff Elaad Eliahu ("Eliahu") brings this action against defendant Mediaite, LLC ("Mediaite"), alleging copyright infringement in violation of 17 U.S.C. § 501. (See Amended Complaint ("Am. Compl."), Dkt. No. 21.) Now before the Court is Mediaite's Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (See Dkt. No. 31.) For the reasons discussed below, Mediaite's Motion is **DENIED**.

## I. BACKGROUND[1]

Eliahu is a photo- and video-journalist. On or about May 19, 2023, Eliahu attended the funeral of nonparty Jordan Neely ("Neely"), a New Yorker whose death on May 1, 2023, has been the subject of widespread public discourse in New York and

---

[1] Except as otherwise noted, the following background derives from the Amended Complaint. The Court takes all facts alleged therein as true and construes all justifiable inferences arising therefrom in the light most favorable to the plaintiff, as required under the standard set forth below in Section II.

around the United States.[2] After the funeral, Eliahu captured
a fifteen-second video (the "Video") of United States House
of Representatives Member Alexandria Ocasio-Cortez ("Ocasio-
Cortez") commenting on Neely's death. The same day, Eliahu
licensed the Video to nonparty TimCast News for the purpose
of public display and distribution. Eliahu later registered
the Video with the United States Copyright Office on July 27,
2023.

Defendant Mediaite is a for-profit news organization
that covers media and politics on its website,
www.mediaite.com. On May 19, 2023, Mediate published an
article (the "Article") reporting on Ocasio-Cortez's
comments. The Article included an image alleged to be a
screenshot (the "Screenshot") of a single frame from Eliahu's
Video. Eliahu alleges that he never licensed any use of the
Video to Mediaite.

Eliahu notified Mediaite on July 10, 2024, of the
allegedly infringing use of the Video in an effort to resolve
this matter without litigation. Having reached no resolution,
Eliahu filed this suit on December 20, 2023. After an exchange
of pre-motion letters pursuant to this Court's Individual
Practices (see Dkt. Nos. 25, 26, 27), Mediate made its Motion

---

[2] See, e.g., Emma G. Fitzsimons and Maria Cramer, A Subway Killing Stuns,
and Divides, New Yorkers, N.Y. Times, May 4, 2023, www.nytimes.com/
2023/05/04/nyregion/jordan-neely-death-subway-nyc.html.

to Dismiss the Amended Complaint (see Dkt. No. 31) supported by a memorandum of law (see Dkt. No. 32 [herein "Def. Mem."]). Eliahu thereafter filed a response (see Dkt. No. 33 [herein "Pl. Mem."]), to which Mediate replied (see Dkt. No. 34 [herein "Def. Reply Mem."]).

## II.  <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." <u>Lynch v. City of New York</u>, 952 F.3d 67, 75 (2d Cir. 2020) (quoting <u>Twombly</u>, 550 U.S. at 556); <u>see Iqbal</u>, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

In determining whether a complaint states a claim that is plausible, courts must "give no effect to assertions of law or to legal conclusions couched as factual allegations,

but [must] accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) (quotation marks, alterations, and citations omitted); see Iqbal, 556 U.S. at 678.

## III. DISCUSSION

"The owner of a copyright has the exclusive right to — or to license others to — reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his copyrighted work." Arista Records, LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010) (citing 17 U.S.C. § 106). "In order to establish a claim of copyright infringement, a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." Peter F. Gaito Architecture, LLC v. Simone Development Corp., 602 F.3d 57, 63 (2d Cir. 2010) (quoting Hamil Am. Inc. v. GFI, 193 F.3d 92, 99 (2d Cir. 1999)). No party here disputes that Eliahu

owns a valid copyright to the Video and that Mediaite copied the Screenshot from Eliahu's Video.

Mediate instead argues that its use of the Video is not actionable for two independent reasons. First, Mediaite contends that the Screenshot was merely *de minimis* use of the Video, and therefore no "substantial similarity" exists between the two works at issue in this case. Peter F. Gaito Architecture, 602 F.3d at 63. (See also Def. Mem. at 6-8.) Second, Mediaite argues that, even if actionable copying has occurred, publication of the Screenshot is protected by the doctrine of fair use, codified at 17 U.S.C. § 107.[3] (See Def. Mem. at 8-18.) For the reasons described below, the Court rejects both arguments.

A. *DE MINIMIS* USE

As an essential element of copyright infringement, "substantial similarity" requires that a defendant's alleged copying is "quantitatively and qualitatively sufficient to support the legal conclusion that infringement . . . has occurred." Ringgold v. Black Entm't Television, Inc., 126

---

[3]  Mediaite also argues that the Amended Complaint is deficient with respect to Eliahu's allegations of willful copyright infringement. The Court declines to dismiss the portion of Eliahu's Amended Complaint that alleges willful infringement. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), and the Court must accept such allegations as true, see Anderson News, 680 F.3d at 185. Whether or not the alleged copyright infringement was willful raises a factual dispute to be decided upon a full record.

F.3d 70, 75 (2d Cir. 1997). "To establish that the infringement of a copyright is *de minimis,* and therefore not actionable, the alleged infringer must demonstrate that the copying of the protected material is so trivial 'as to fall below the quantitative threshold of substantial similarity.'" Sandoval v. New Line Cinema Corp., 147 F.3d 215, 217 (2d Cir. 1998) (quoting Ringgold, 126 F.3d at 74). In other words, "[t]he *de minimis* doctrine essentially provides that where unauthorized copying is sufficiently trivial, 'the law will not impose legal consequences.'" Davis v. The Gap, Inc., 246 F.3d 152, 172 (2d Cir. 2001) (quoting Ringgold, 126 F.3d at 74).

To determine whether the alleged copying in this case falls below the quantitative threshold of substantial similarity, the Court must evaluate whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1001 (2d Cir. 1995); see also Sandoval, 147 F.3d at 218; Ringgold, 126 F.3d at 77. Factors relevant to this inquiry include "the amount of the copyrighted work that was copied" as well as "the observability of the copyrighted work in the allegedly infringing work." Sandoval, 147 F.3d at 217. Observability, in turn, includes review of the "focus" and "prominence" of

copyrighted material in the allegedly infringing work. Ringgold, 126 F.3d at 75.

"[B]ecause the question of substantial similarity typically presents an extremely close question of fact, questions of non-infringement have traditionally been reserved for the trier of fact." Peter F. Gaito Architecture, 602 F.3d at 63 (citation omitted). In circumstances where two works are "not substantially similar as a matter of law," or where "no reasonable jury, properly instructed, could find that the two works are substantially similar," it is sometimes appropriate for a court to dismiss a copyright infringement action on a motion under Rule 12(b). Id. (quotation marks omitted) (collecting cases). This, however, is not such a case.

The Court concludes it is plausible that "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Knitwaves, Inc., 71 F.3d at 1002; see Sandoval, 147 F.3d at 218; Ringgold, 126 F.3d at 77. Here, the Screenshot occupied a prominent place in Mediaite's Article, appearing just below the Article's headline but before the Article's body text. (See Ex. 2 to Am. Compl.) The Screenshot was the only image that Mediate used to illustrate the Article, and the Screenshot was visible

to the Article's readers for the entire time the Article was displayed on the readers' screens. (See id.)

That Mediaite allegedly copied just a small fragment of Eliahu's original work is relevant to — but not dispositive of — the substantial similarity inquiry. (See Def. Mem. at 6-7.) As Eliahu notes, Mediaite's Screenshot captures the one distinctive moment depicted in Eliahu's short Video; moreover, the Screenshot is a prominent feature of the Article. (See Pl. Mem. at 6.) Both of these facts support the plausible conclusion that a lay observer would view the Mediaite Article as an appropriation of Eliahu's Video. See Hirsch v. Complex Media, Inc., 18 Civ. 5488, 2018 WL 6985227, at *3 (S.D.N.Y. Dec. 10, 2018) (finding infringement liability where a copyrighted photo appeared prominently in an online news video for two seconds); see also Ringgold, 126 F.3d at 77 (same, where a copyrighted poster appeared prominently in the background of a television show for twenty-six seconds); cf. Sandoval, 147 F.3d at 218 (finding de minimis use where copied images were "out of focus" and "displayed only briefly" in the background of a feature-length film); Gottlieb Dev. LLC v. Paramount Pictures Corp., 590 F. Supp. 2d 625, 632-33 (S.D.N.Y. 2008) (similar).

Mediaite relies on Rudkowski v. MIC Network, Inc. to challenge these conclusions. 17 Civ. 3647, 2018 WL 1801307

(S.D.N.Y. Mar. 23, 2018). (See also Def. Mem. at 7; Def. Reply Mem. at 2-3.) As in this case, the defendant in Rudkowski was accused of copyright infringement for publishing a screenshot from a copyrighted video. 2018 WL 1801307, at *1. Though the facts of Rudkowski are virtually indistinguishable from those at issue this case, this Court finds Rudkowski's interpretation of the applicable case law unpersuasive. See id. at *4.

The court in Rudkowski declined to follow the Second Circuit's guidance in Ringgold, which in turn holds that observability and prominence are critically important factors in the de minimis use analysis. See 2018 WL 1801307, at *4 (distinguishing Ringgold, 126 F.3d at 72-73). Rudkowski held that the principles set forth in Ringgold may be set aside as "factually inapposite" because the allegedly infringing work was a "still photograph, rather than a video." 2018 WL 1801307, at *4. However, this Court does not discern any principled reason why Ringgold can be disregarded when an alleged infringer has published a photograph, as opposed to a video. See Ringgold, 126 F.3d at 75 (instructing courts to look to observability and prominence "[i]n cases involving visual works," not just video works). This Court's review of the relevant case law has not found any other decision that distinguishes Ringgold in this way. See, e.g., Kelley v.

9

Morning Bee, Inc., 21 Civ. 8420, 2023 WL 6276690, at *5-6
(S.D.N.Y. Sept. 26, 2023) (applying Ringgold to allegedly
infringing photographs and collecting cases); Hirsch, 2018 WL
6985227, at *3-4 (same).

Accordingly, based on the facts alleged in the Amended
Complaint, the Court concludes that Mediaite's Screenshot
does not constitute a *de minimis* use of Eliahu's Video.

B. FAIR USE

"The law has long recognized that 'some opportunity for
fair use of copyrighted materials' is necessary to promote
progress in science and art." TCA Television Corp. v.
McCollum, 839 F.3d 168, 178 (2d Cir. 2016) (quoting Campbell
v. Acuff-Rose Music, Inc., 510 U.S. 569, 575 (1994)). Four
non-exclusive factors bear on whether there has been a "fair
use" of copyrighted work: "(1) the purpose and character of
the use, including whether such use is of a commercial nature
or is for nonprofit educational purposes; (2) the nature of
the copyrighted work; (3) the amount and substantiality of
the portion used in relation to the copyrighted work as a
whole; and (4) the effect of the use upon the potential market
for or value of the copyrighted work." 15 U.S.C. § 107; see
also Andy Warhol Found. for the Visual Arts, Inc. v.
Goldsmith, 598 U.S. 508, 527 (2023) ("Warhol IV").

"All four statutory factors are to be explored, and the results weighed together, in light of the purposes of copyright." Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith, 11 F.4th 26, 37 (2d Cir. 2021) ("Warhol III") (citation, quotation marks, and alterations omitted). Ultimately, the "test of fair use is whether the copyright law's goal of promoting the Progress of Science and useful Arts would be better served by allowing the use than by preventing it." Otto v. Hearst Commc'ns, Inc., 345 F. Supp. 3d 412, 426 (S.D.N.Y. 2018) (quoting Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc., 150 F.3d 132, 141 (2d Cir. 1998)).

Because the fair use determination comprises an "open-ended and context-sensitive inquiry," the factfinder in a typical case decides questions of fair use on a fully developed record. Cariou v. Prince, 714 F.3d 694, 705 (2d Cir. 2013); see TCA Television Corp., 839 F.3d at 178. However, it is possible that fair use is "so clearly established by a complaint as to support dismissal of a copyright infringement claim" on the pleadings. TCA Television Corp., 839 F.3d at 178; see Grant v. Trump, 563 F. Supp. 3d 278, 284 (S.D.N.Y. 2021) ("Because fair use is a fact-intensive inquiry, it is rarely appropriate for a court to make a determination of fair use at the motion to dismiss stage.").

Mediaite insists that the Amended Complaint clearly establishes fair use because Mediaite published the Screenshot in the context of news reporting. However, "news reporting is specifically named in 17 U.S.C. § 107 as a *potential method* of fair use." Otto, 345 F. Supp. 3d at 427 (emphasis added). "[A] news reporting purpose by no means guarantees a finding of fair use." Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P., 756 F.3d 73, 85 (2d Cir. 2014) (quoting Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 557 (1985)). Indeed, "[t]he promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a fair use 'news report.'" Id. (quoting Harper & Row, 471 U.S. at 557). Accordingly, the Court considers each fair use factor in kind and concludes that the Amended Complaint does not establish a fair use defense sufficient to support dismissal.

1. Purpose and Character of the Use

The first fair-use factor considers the "purpose and character of the use," § 107(1), and is "the heart of the fair use inquiry," Cariou, F.3d at 705 (quoting Blanch v. Koons, 467 F.3d 244, 251 (2d Cir. 2006)). "The central question" of the first fair-use factor is "whether the new work merely supersedes the objects of the original creation (supplanting the original), or instead adds something new,

with a further purpose or different character." <u>Warhol IV</u>, 598 U.S. at 528 (alterations and quotation marks omitted). To answer that central question, courts in this Circuit look to "the extent to which the [new] work is 'transformative' as well as whether it is commercial." <u>Warhol III</u>, 11 F.4th at 37.

"A use that has a further purpose or different character is said to be 'transformative,'" which is "a matter of degree." <u>Warhol IV</u>, 598 U.S. at 529. "The larger the difference, the more likely the first factor weighs in favor of fair use. The smaller the difference, the less likely." <u>Id.</u> "If an original work and a secondary use share the same or highly similar purposes, and the secondary use is of a commercial nature, the first factor is likely to weigh against fair use, absent some other justification for copying." <u>Id.</u> at 532-33. In other words, a transformative use must do "something more than repackage or republish the original copyrighted work." <u>Author's Guild, Inc. v. HathiTrust</u>, 755 F.3d 87, 96 (2d Cir. 2014); <u>see</u> <u>Ferdman v. CBS Interactive, Inc.</u>, 342 F. Supp. 3d 515, 532 (S.D.N.Y. 2018).

In this case, the Screenshot has no "further purpose" or "different character" from Eliahu's Video. <u>Warhol IV</u>, 598 U.S. at 528. Both were created for a journalistic purpose: to document political discourse following Jordan Neely's death,

13

specifically by visually depicting one moment when Ocasio-Cortez contributed to that discourse. (See Am. Compl. ¶ 16 (describing Eliahu's intention to "document the funeral . . . for purposes of news reporting and commentary"); cf. Def. Mem. at 10 (describing Mediaite's intention to "provide additional commentary and reporting" on Neely's death and describing the purpose of the Screenshot as "journalistic").)

Still, Mediaite contends that its use of the Screenshot is transformative because the Mediaite Article described "the larger incident" and "provide[d] more background and context" than Eliahu's Video. (Def. Mem. at 15.) The Court finds that, in these circumstances where the original work and the secondary use concern the same subject matter, the addition of contextual information does not change the work's purpose or character. Warhol IV, 598 U.S. at 541 (rejecting the notion that "any use that adds some new expression, meaning, or message" is transformative fair use); Ferdman, 342 F. Supp. 3d at 532-33 (holding that a news article was not transformative where it republished a photographer's copyrighted images and added explanatory text). This litigation does not reflect the quintessential transformative-use case where Mediaite has made a comment on or criticism of Eliahu's reporting. Cf. Schwartzwald v. Oath,

Inc., 19 Civ. 9938, 2020 WL 5441291, at *4 (S.D.N.Y. Sept. 10, 2020) (finding fair use when a website copied a news photo to "mock" the photo's subject); Yang v. Mic Network, Inc., 405 F. Supp. 3d 537, 543 (S.D.N.Y. 2019) ("If a photograph is merely used as an illustrative aid that depicts the subjects described in an article, this does not constitute transformative use." (alterations and quotation marks omitted)). All that Mediaite has done is "repackage or republish" the Video in the form of a static image to illustrate its Article. HathiTrust, 755 F.3d at 96; see Warhol IV, 598 U.S. at 529.

"The first fair use prong also requires an analysis of whether the use was commercial." O'Neil v. Ratajkowski, 563 F. Supp. 3d 112, 129 (S.D.N.Y. 2021). "The crux of the profit/nonprofit distinction is . . . whether the user stands to profit from exploitation of copyrighted material without paying the customary price." Otto, 345 F. Supp. 3d at 429 (quoting Harper & Row, 471 U.S. at 562). Mediaite used an image from Eliahu's Video without permission or licensure. Especially where Eliahu asserted that he licensed his Video to another news organization for a fee (and Mediaite did not pay that fee), it is evident that Mediaite stands to gain commercially from its use of the Screenshot "without paying the customary price." Id.

The Court accordingly finds the first factor weighs strongly against fair use.

2. <u>Nature of the Copyrighted Work</u>

The Copyright Act specifies that the next relevant factor to fair use is "the nature of the copyrighted work." 17 U.S.C. § 107(2). To evaluate this factor, the Court must determine "(1) whether [the copyrighted work] is 'expressive or creative . . . or more factual, with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope of fair use involving unpublished works being considerably narrower.'" <u>Warhol III</u>, 11 F.4th at 45 (quoting <u>Blanch</u>, 467 F.3d at 256). However, this "second factor has rarely played a significant role in the determination of a fair use dispute." <u>Authors Guild v. Google, Inc.</u>, 804 F.3d 202, 220 (2d Cir. 2015).

The Video is a published, factual work. Even if Eliahu "selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the [V]ideo" (<u>see</u> Am. Compl. ¶ 18), it is not plausible that he had control over the newsworthy contents of the video – namely, Ocasio-Cortez's words and actions, <u>see</u> <u>Hirsch</u>, 2018 WL 6985227, at *7 (collecting cases and noting that "[c]ourts in the Second and other Circuits have found that, when the

16

original photographic work was created for news-gathering purposes, this factor favors fair use").

Accordingly, the second factor weighs in favor of fair use.

3. Amount and Substantiality of the Use

The third factor in the fair-use analysis considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole."[4] 17 U.S.C. § 107(3); see also Warhol III, 11 F.4th at 45. In assessing this factor, the Court considers "not only the quantity of the materials to be used but also their quality and importance in relation to the original work." Warhol III, 11 F.4th at 45-46 (quotation marks omitted). "The ultimate question under this factor is whether 'the quantity and value of the materials used are reasonable in relation to the purpose of the copying.'" Id. at 46 (quoting Campbell, 510 U.S. at 586).

Mediaite argues that this factor must weigh in favor of fair use because the Screenshot "constitutes only a small

---

[4] This fair-use factor is "both analytically and substantively distinct from the de minimis analysis." Hirsch, 2018 WL 6985227, at *7. "The de minimis doctrine essentially provides that where unauthorized copying is sufficiently trivial, 'the law will not impose legal consequences.'" Davis, 246 F.3d at 172 (quoting Ringgold, 126 F.3d at 74). By comparison, there is no threshold amount of copying that becomes fair use as a matter of law, no matter how trivial; the amount and substantiality of copying is just one factor to be considered among others in deciding whether otherwise-actionable copying was fair. Ringgold, 126 F.3d at 75-76 ("Though the concept of de minimis is useful in insulating trivial types of copying from liability . . . the concept is an inappropriate one to be enlisted in fair use analysis.").

fragment of the larger video." (Def. Mem. at 16.) Admittedly, the Screenshot is quantitatively small – just one frame of the Video, without any audio. However, as discussed above, the Screenshot captures the key moment of Eliahu's short Video, in which Ocasio-Cortez's demeanor is clearly visible as she makes her comments. Considering the Screenshot's "importance in relation to the original work," Mediaite appropriated the moment in the video with the most value to potential readers or licensors. Warhol III, 11 F.4th at 46.

Both parties here make persuasive arguments; however, each argument counteracts the other. Though Mediaite used a lowest "quantity of materials" possible, it used the fragment of the Video with the highest "quality and importance." Warhol III, 11 F.4th at 45-46. Accordingly, the third factor weighs neither for nor against fair use.

4. Effect of the Use on the Market for the Original

The fourth factor under Section 107 asks "whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work." Warhol III, 11 F.4th at 48 (quotation marks omitted) (quoting Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605, 613 (2d Cir. 2006)). This factor asks "not whether the second work would *damage* the market for the first (by, for example, devaluing it through parody or criticism), but whether

18

it *usurps* the market for the first by offering a competing substitute." Id. This factor is "necessarily intertwined" with the first factor, as "the more the objective of the secondary use differs from that of the original, the less likely it will supplant the commercial market for the original." Capitol Recs., LLC v. ReDigi Inc., 910 F.3d 649, 662 (2d Cir. 2018).

The Court can plausibly infer that — if use of the Screenshot "became a widespread practice" — the Screenshot's reproduction would usurp Eliahu's market for sale or licensure of the Video. Warhol III, 11 F.4th at 50. The Screenshot captures the key moment of Eliahu's Video; readers who see the Screenshot may no longer have a reason to seek out a copy of the Video. Mediaite's argument that Eliahu has not pleaded facts to support damage to the market for the Video cannot be credited at this stage of the litigation. The Court must "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff" on a motion to dismiss. Anderson News, 680 F.3d at 185. Moreover, "[f]air use is an affirmative defense; as such, the ultimate burden of proving that the secondary use does not compete in the relevant market is appropriately borne by the party asserting the defense: the secondary user." Warhol III, 11 F.4th at 49 (citing Campbell, 510 U.S. at 590). It

will be Mediaite's task in discovery to develop the facts to support its argument on this factor.

Accordingly, the fourth factor weighs against fair use.

* * *

Considering all four fair-use factors together, the Court concludes that the goals of copyright law would not "be better served by allowing the use than by preventing it." Otto, 345 F. Supp. 3d at 426. The first and fourth fair-use factors weigh heavily in favor of Eliahu. Mediaite did not transform Eliahu's original work, but rather published a new work that largely supplants Eliahu's original work. Moreover, Mediaite's alleged copying, at least plausibly, affects Eliahu's market for selling or licensing his work. The third fair-use factor does not weigh in favor of either party's position, given that Mediaite allegedly copied just one brief moment from the Video; nonetheless the moment that contains much of the Video's news value. Only the second fair-use factor — which "has rarely played a significant role in the determination of a fair use dispute" — tips in Mediaite's favor, given that the Video is an informational (rather than expressive) work. Google, 804 F.3d at 220. Together, these statutory factors do not support a finding of fair use.

Brief consideration of "the purposes of copyright law" confirms this conclusion. 17 U.S.C. § 107. "[C]bpyright (like

other forms of intellectual property) involves a tradeoff between stimulating innovative activity, on the one hand, and allowing follow-on innovation, on the other." Warhol IV, 598 U.S. at 549. The rights afforded to Eliahu by the Copyright Act incentivized him to attend the funeral of Jordan Neely and record the commentary of public officials there. (See, e.g., Am. Compl. ¶ 21.) Mediaite, evidently finding the Video to have illustrative value for its readers, cannot freely copy and publish Eliahu's work in the name of fair use without permission. Were all news sources permitted to do so, the economic incentive to create these important journalistic works in the first place would disappear. See Warhol IV, 598 U.S. at 549-50.

## IV.  ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion of defendant Mediaite, LLC ("Mediaite") to dismiss the Amended Complaint of plaintiff Elaad Eliahu (Dkt. No. 31) is **DENIED**; and it is further

**ORDERED** that Mediaite shall answer the Amended Complaint within 21 days of the date of this Order.

The Clerk of Court is respectfully directed to close the Motion entered at Dkt. No. 31.

Dated:      23 September 2024
            New York, New York

_____
                        Victor Marrero
                           U.S.D.J.